| | | |
|---|---|---|
| DAVID SANFORD, | ) | |
| | ) | |
| DREW SANFORD, | ) | |
| | ) | |
| REVOCABLE TRUST AGREEMENT | ) | |
| OF DAVID K. SANFORD, and | ) | |
| | ) | |
| JOINT REVOCABLE TRUST | ) | |
| AGREEMENT | ) | |
| OF DAVID K. SANFORD AND | ) | |
| MELISSA K. SANFORD, DATED | ) | |
| SEPTEMBER 22, 2015. | ) | |
| | ) | Case No. _____ |
| PLAINTIFFS, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JIM MORRIS | ) | |
| | ) | |
| PAUL FREEMAN | ) | |
| | ) | |
| TROCK HOLDINGS, LLC | ) | |
| | ) | |
| COMMUNICATIONS SOLUTIONS, LLC | ) | |
| | ) | |
| PBACK HOLDINGS, II, LLC | ) | |
| | ) | |
| BAITWORKX, LLC | ) | |
| | ) | |
| OZARK SHORES, LLC, and | ) | |
| | ) | |
| JOHN DOES 1-10 | ) | |
| | ) | |
| DEFENDANTS | ) | |
| | ) | |

## COMPLAINT

Comes Now, Plaintiffs David Sanford, Drew Sanford, Revocable Trust Agreement of David K. Sanford, and the Joint Revocable Trust Agreement of David K. Sanford and Melissa K. Sanford, Dated September 22, 2015 and for their causes of action against Defendants state and aver as follows:

## Parties

1. David Sanford is a resident of Polk County, Missouri.

2. Drew Sanford is a resident of Greene County, Missouri.

3. The Revocable Trust Agreement of David K. Sanford is a resident of Missouri.

4. The Joint Revocable Trust Agreement of David K. Sanford and Melissa K. Sanford, Dated September 22, 2015 is a resident of Missouri.

5. Jim Morris is a resident of Greene County, Missouri.

6. Paul Freeman is a resident of Greene County, Missouri.

7. Paul Freeman is an owner of TRock Holdings, LLC.

8. TRock Holdings, LLC is a Missouri LLC.

9. TRock Holdings, LLC's agent for service is Jason Shaffer 1655 S Enterprise Suite A2, Springfield, MO 65804.

10. Paul Freeman engaged Westward Alliance, LLC to form TRock Holdings, LLC.

11. PBack Holdings II, LLC was formed on November 21, 2023.

12. PBack Holdings, II, LLC is a Missouri LLC whose agent for service is Michael DeArmon 2144 Republic Road, Suite F-302 Springfield, MO 65804.

13. Jim Morris is an owner of PBack Holdings II, LLC.

14. John Does 1-10 are individuals and entities who have worked with Paul Freeman, Jim Morris, Pback Holdings II, LLC, TRock Holdings, LLC.

15. Boat Workx, LLC was formed June 2, 2020.

16. Boat Workx, LLC is a Missouri LLC whose registered agent for service is Craig Lowther, 901 E St Louis St, 20th Floor Springfield, MO 65806

17. Boat Workx, LLC registered the fictitious name of Boat Wrx on June 2, 2020.

18. Boat Workx, LLC registered the fictitious name of Bait-Wrx on February 26, 2021.

19. Baitworkx, LLC, is Missouri LLC whose agent for service is Peter Edwards 3340 E Cherry St. Springfield, MO 65802-2630.

20. Jim Morris organized the new company Baitworkx, LLC on or about March 13, 2023.

21. Baitworkx, LLC registered the fictitious names of Baitwrx, Baitworkx Marine, and Baitworkx Powersports.

## Jurisdiction

22. Jurisdiction is proper in this Court pursuant to 28 U.S.C.A. § 1331.

23. This Court has federal question jurisdiction, because one or more causes of action arises out of violations of Federal Anti-Trust law, and RICO.

24. This Court has supplemental jurisdiction pursuant to 28 U.S.C.A. § 1367 over all claims, because they arise under the same facts and circumstances.

25. Venue is proper pursuant to 28 U.S.C.A. § 1391, because all of the events and omissions giving rise to Plaintiffs' claims occurred in Missouri.

## Facts Common to All Counts

26. Jim Morris, David Sanford and Drew Sanford own multiple companies together.

27. Paul Freeman, through his company TRock Holdings, LLC, owns one or more companies with Jim Morris, David Sanford, and Drew Sanford.

28. The mutually-owned limited liability companies are as follows: Boat Workx, LLC; Green LP Transport, LLC; Green LP Energy Partners, LLC; Green Liquid Petroleum, LLC; James River Manufacturing, LLC; MS Propane Investments, LLC; MS Propane, LLC; Real Leasing, LLC; Spaces General Contracting, LLC; and Rural Clean Energy, LLC (hereinafter "the LLCs").

29. The LLCs borrowed money from Southern Bank in order to finance their operations. Most of the loans were renewed annually.

30. Plaintiffs personally guaranteed some of the LLCs' borrowings.

31. The parties ran the LLCs together pursuant to the LLCs' operating agreements for years.

32. The parties executed annual loan renewals, loan guaranties, and modification agreements with Southern Bank and Legacy Bank, as required by the LLCs' operating agreements.

33. The LLCs were successful and growing.

34. The LLCs depended on the money borrowed from Southern Bank and Legacy Bank for operations.

35. Jim Morris began working with Paul Freeman in 2020.

36. Jim Morris instructed David Sanford to use funds from Communications Solutions, LLC to pay Paul Freeman for his work for the LLCs.

37. David Sanford used funds from Communications Solutions, LLC to pay Paul Freeman.

38. Jim Morris used funds from Communications Solutions, LLC to fund Pback Holdings II, LLC.

39. In 2022, David Sanford and Drew Sanford became aware that Paul Freeman was found liable in a fraud and deceptive trade practices case for $2,000,000 in damages. *White v. Freeman*, No. 17-13110 (11th Cir. 2018).

40. The parties' business relationship deteriorated after David Sanford and Drew Sanford discovered Paul Freeman's fraud.

41. Paul Freeman and Jim Morris began planning to take the LLCs and the assets of the LLCs from Drew Sanford with no compensation.

42. Paul Freeman and Jim Morris formed 4050 Penn KC, LLC without David Sanfords' knowledge and forged his signature on the 4050 Penn KC, LLC Operating Agreement using a stamp Paul Freeman stole. Exhibit J.

43. First, Jim Morris refused to sign loan renewals and guaranties in order to starve the LLCs of cash.

44. Second, Defendants stopped construction and diverted money from the LLC construction companies in order to require individual LLCs to pay to fix and complete construction defects and force the LLCs to operate in incomplete buildings, requiring the LLCs to expend more cash and borrow cash from Plaintiffs.

45. Third, Defendants formed their own companies and stole trade secrets and intellectual property from the LLCs, sold LLC assets and inventory to the defendants' companies at below-market rates, and operated their own companies using intentionally similar names to compete with the LLCs and destroy the LLC business.

46. Fourth, Defendants coordinated to use Pback Holdings II, LLC to purchase the debt of the LLCs in order to acquire the assets of the LLCS without payment to Plaintiffs and to force Plaintiffs to pay loan deficiencies created by Defendants' destruction of the LLCs.

## Diversion of Funds and Customers from Boat Workx, LLC

47. Before January 2021, Boat Workx, LLC's business focused on offering dealership services for various brands of boat manufacturers and providing maintenance and repair services for marine engines and vessels.

48. In or around January 2021, Boat Workx, LLC began also providing retail services for fishing tackle and related goods and began offering some of its own fishing tackle products under the.

49. On or about February 26, 2021, Boat Workx, LLC registered the fictitious name Bait-Wrx with the Missouri Secretary of State.

50. Boat Workx, LLC offered its fishing tackle products and services using the fictitious name Bait-Wrx, and Bait-Wrx was treated as a separate division within Boat Worx, LLC.

51. Boat Workx, LLC adopted and used the trademark BAITWRX in connection with its retail services. Boat Workx, LLC established substantial recognition and goodwill in the BAITWRX trademark.

52. The BAITWRX trademark is the subject of federal trademark registration no. 7,168,694.

53. In connection with developing its own fishing tackle products, Boat Workx, LLC developed its own proprietary lure designs, developed confidential know how and other trade secrets related to the manufacturing of its tackle, adopted and used the VALOR BAITS trademark, and established substantial recognition and goodwill in the VALOR BAITSs trademark.

54. Boat Workx, LLC, along with the commonly owned entities James River Manufacturing, LLC and Green Liquid Petroleum, LLC, also acquired certain assets for manufacturing the VALOR BAITS lures, including manufacturing equipment and lure molds.

55. On or about December 8, 2021, the members of Boat Workx appointed Jim Morris as the manager of Boat Workx.

56. On or about April 13, 2023, the members of Boat Workx agreed that Morris would be the "sole 'Managing Member'" and that, "absent fraudulent or reckless acts committed by James Morris to the detriment of the Company, James Morris shall remain in the capacity of sole Managing Member until August 1, 2023, or until he is removed by a unanimous vote."

57. Unbeknownst to the Sanfords, on or about March 13, 2023, Morris had organized the formation of Baitworkx LLC with the Missouri Secretary of State.

58. On information and belief, Morris is a member or owner of Baitworkx LLC.

59. Also unbeknownst to the Sanfords, on or about March 13, 2023, Morris had registered with the Missouri Secretary of State the fictitious name Baitwrx on behalf of Baitworkx LLC.

60. On information and belief, Morris formed Baitworkx LLC and registered the fictitious name Baitwrx because he intended to transfer and usurp the business of Bait-Wrx, a division of Boat Worx, LLC, for his own benefit.

61. In or about July 2023, Morris in his position as manager of Boat Workx, LLC authorized the sale to Baitworkx, LLC of a substantial portion of the inventory of Bait-Wrx, a division of Boat Workx, LLC, as well as assets related to VALOR BAITS lures.

62. On information and belief, Morris sold the inventory of Bait-Wrx, a division of Boat Workx, LLC, at a substantial discount to the benefit of Baitworkx, LLC and to the benefit of himself, an owner or member of Baitworkx, LLC.

63. Morris omitted certain inventory from the transaction.

64. On information and belief, Morris omitted certain inventory to benefit Baitworkx, LLC and himself.

65. Morris also took to Baitworkx, LLC the employees, proprietary lure designs, the VALOR BAITS brand, confidential know how, and other confidential competitive information of Bait-Wrx, a division of Boat Workx, LLC.

66. On information and belief, after the sale of the substantial portion of the inventory, representatives of Baitworkx, LLC took additional inventory of Bait-Wrx, a division of Boat Workx, LLC, and placed it into the inventory of Baitworkx, LLC with inadequate or no compensation.

67. On information and belief, Morris instructed the representatives of Baitworkx, LLC to take the additional inventory from Bait-Wrx, a division of BoatWorkx, LLC.

68. On or about August 3, 2023, Morris organized the formation of Ozark Shores Boat Company, LLC ("Ozark Shores") with the Missouri Secretary of State.

69. Morris is the manager of Ozark Shores.

70. On information and belief, Morris is a member or owner of Ozark Shores.

71. On information and belief, Morris formed Ozark Shores because he intended to transfer and usurp the remaining business of Boat Workx, LLC, namely, its boat dealership and service department business, for his own benefit.

72. On information and belief, Morris told multiple employees of Boat Workx, LLC that he planned to start his own boat dealership.

73. On information and belief, Morris had a conversation with a representative of Caymas Boats, one of the flagship boat brands offered by Boat Workx, LLC, about rebates due from Caymas Boats to Boat Workx, LLC. At the time of the conversation, Boat Workx,

LLC was suffering significant financial difficulties due to the actions of Morris and had a substantial inventory of unsold Caymas Boats. In that conversation, Caymas presented Morris with two options: (a) accept the rebate from Caymas Boats or (b) decline the rebate in exchange for Caymas retaking possession of the Caymas Boats in Boat Workx, LLC's inventory and forgiving any outstanding debts owed on those boats without further payment required from Boat Workx, LLC. Morris requested the rebate.

74. On information and belief, Morris declined to return the substantial inventory of Caymas Boats because he intended to transfer the inventory to his new competing dealership.

75. On information and belief, during that conversation with Caymas, Morris represented to Caymas that Morris would be starting another boat dealership.

76. On information and belief, Morris also told representatives of other boat manufacturers that had relationships with Boat Workx, LLC that Morris planned to start a competing boat dealership.

77. On information and belief, in or around August or September 2023, Morris caused Tige Boats, one of the flagship boat brands offered under Boat Workx, LLC's boat dealership services, to transfer the name of the dealership account from Boat Workx, LLC to Ozark Shores.

78. On or about November 7, 2023, Baitworkx LLC registered the fictitious name BAITWRX MARINE with the Missouri Secretary of State.

79. On or about November, 7, 2023, Baitworkx LLC registered the fictitious name BAITWRX POWERSPORTS with the Missouri Secretary of State.

80. On information and belief, Morris caused Baitworkx, LLC to register the fictitious names BAITWRX MARINE and BAITWRX POWERSPORTS as potential alternatives for operating the boat dealership that he had intended to operate under Ozark Shores.

81. On information and belief, since becoming the manager of Boat Workx, LLC in December 2021, Morris intentionally took other actions, including but not limited taking actions intended to cause key employees to terminate their employment and failing to fill key sales positions and other roles, to harm the business of Boat Workx, LLC. Morris took these actions to place Boat Workx, LLC in a position where it would be unable to pay its debts.

## Diversion of Funds from Spaces

82. David Sanford, Drew Sanford, Jim Morris and Paul Freeman, though T-Rock, own Spaces.

83. Spaces was formed in Nevada on or about January 20, 2021 and, on or about September 9, 2021, was registered with the state of Missouri as a foreign limited liability company.

84. Spaces' stated purpose as identified in its filings with the state of Missouri is "construction."

85. Spaces' Operating Agreement states that it is manager-managed limited liability company.

86. Spaces' Operating Agreement, executed in December 2020, designates David Sanford as the manager of Spaces.

87. On or about December 8, 2021, David Sanford was replaced as Spaces' manager by the appointment of Jim Morris as manager pursuant to a resolution of Spaces' members.

88. The request for Jim Morris to be made manager was initiated by Jim Morris and Paul Freeman by way of TRock.

89. Shortly after Spaces' formation, Jim Morris and Paul Freeman (acting on behalf of TRock) told David Sanford and Drew Sanford that they (the Sanfords) could retain their ownership in Spaces, but that Morris and Paul Freeman would manage the company going forward.

90. After Morris became acting manager of Spaces, David Sanford and Drew Sanford had no day-to-day involvement with the company, including its management.

91. After Morris became acting manager of Spaces, Morris and Paul Freeman began operating Spaces, and were responsible for management of its day-to-day business including oversight of its construction projects.

92. At all relevant times, Spaces was providing construction management services for projects in Strafford, Missouri, and Springfield, Missouri.

93. At its project sites in Strafford and Springfield, Spaces' acted as general contractor of the projects, and further performed insulation and electrical installation services for the projects.

94. Spaces performs insulation services as Spaces Insulation and performs electrical services as Spaces Electric.

95. Upon information and belief, neither Morris nor TRock (including Paul Freeman) have any experience or formal training in general contracting, or the performance of insulation or electrical work.

96. Upon information and belief, Paul Freeman's son, Garrett Freeman, is serving as project manager on one or more construction projects for Spaces. Garrett Freeman has no experience or formal training as project manager for a general contractor on a construction project.

97. After Morris became acting manager of Spaces, David Sanford and Drew Sanford began noticing QuickBooks accounting entries evidencing that Morris and TRock were using Spaces' company funds for their personal benefit and to the detriment of Spaces.

98. Morris and TRock personally benefited from actions taken by Spaces at their direction, which actions were to the detriment of Spaces, including, but not limited to:

    a. Remodeling Jim Morris's personal lake house without any and/or adequate payment or compensation for the work performed;

    b. Building a barn at Jim Morris's personal residence without any and/or adequate payment or compensation for the work performed;

    c. Creating design specifications and/or building a jungle gym at Jim Morris's personal residence without any and/or adequate payment or compensation for the work performed; and

    d. Acquiring property for TRock and/or Paul Freeman at Table Rock Lake without any and/or adequate payment or compensation.

99. All of the above expenditures were undertaken at the direction of Morris and/or TRock and without the consent or authorization of David Sanford and Drew Sanford for the purpose of diverting money from Plaintiffs to Defendants and to burden the LLCs.

**Defendants' Failure to Accept Full Payoffs for The Propane Company Loans**

100.     Jim Morris was aware on August 22, 2023 that the LLCS, including Boat Workx, LLC, Rural Clean Energy, and Real Leasing, would default without new credit from Southern Bank. Exhibit D.

101.    On August 23, 2023, David Sanford and Drew Sanford executed the Southern Bank loan documents granting extensions of credit and loan guaranties to the LLCs.

102.    Jim Morris refused to execute the Southern Bank credit extensions and loan guaranties on or about August 22, 2023. Exhibit A.

103.    Jim Morris refused to execute the Legacy Bank credit extensions and loan guaranties on or about September 12, 2023. Exhibit H.

104.    The LLC's operating agreements require members to execute credit extensions and loan guaranties when required by the banks.

105.    Jim Morris's refusal to execute the Southern Bank and Legacy Bank credit extensions and loan guaranties hurt the LLCs' ability to conduct business, make purchases, sign new contracts, and pay employees.

106.    On or about September 22, 2023, David and Drew Sanford received a funding commitment from Southern Bank to pay off and refinance $22,700,000 owed by MS Propane, LLC, MS Propane Investments, LLC, Green Liquid Petroleum, LLC, Green LP Transport, LLC, Green Energy Partners, LLC, James River Manufacturing, LLC, Missile Propane, LLC, and Rural Clean Energy, LLC (Propane Companies) (September Funding Commitment). Exhibit E.

107.    This September Funding Commitment would have satisfied all of the Propane Companies' debt.

108.    This September Funding Commitment would have satisfied all of the personal guaranties on the Propane Companies' debt.

109.    This September Funding Commitment would have allowed the Propane Companies to continue operations.

110.    This September Funding Commitment would have cured Mr. Morris's refusal to execute the Southern Bank and Legacy Bank credit extensions.

111.    Mr. Morris refused to accept the September Funding Commitment.

112.    On October 2, 2023, David and Drew Sanford informed Jim Morris that James River Manufacturing was insolvent with a negative net worth of approximately $2,500,000.

113.    On October 2, 2023, David and Drew Sanford informed Jim Morris that James River Manufacturing would have to close due to this insolvency if the parties could not reach an agreement to settle. Exhibit C.

114.    On or about October 3, 2023, Mr. Freeman and Mr. Morris used trade secret information, including customer data, to contact customers of MS Propane to tell the customers of MS Propane that the company was going out of business.

115.    MS Propane lost large commercial customers as a result of Mr. Freeman and Mr. Morris's false statements.

116.    On December 15, 2023, Plaintiffs first communicated an offer to Jim Morris that there was a third-party offer to purchase all of the assets of Green LP, LLC for $500,000 cash and assumption of all outstanding debts of $6,000,000 (Green LP Offer).

117.    The Green LP Offer required the members to agree not to not take a distribution and unanimously consent to use the $500,000 to pay down the Boat Worx, LLC line of credit. All members of Green LP, LLC would be released from their personal guaranty of all debt of Green LP.

118.    David Sanford approved the Green LP Offer.

119.    Drew Sanford approved the Green LP Offer.

120.    Jim Morris did not approve the Green LP Offer.

121.    David Sanford and Drew Sanford communicated the Green LP Offer again on December 19, 2023.

122.    Counsel for Jim Morris, Paul Freeman, and PBack Holdings II, LLC acknowledged receipt of the Green LP Offer on January 2, 2024. Exhibit B.

123.    Jim Morris and PBack Holdings II, LLC failed to accept the Green LP Offer for full repayment of all Green LP, LLC debt.

124.    Jim Morris and PBack Holdings II, LLC failed to accept the Green LP Offer for $500,000 on Boat-Workx, LLC debt.

125.    On October 2, 2023, David and Drew Sanford informed Jim Morris that James River Manufacturing was insolvent with a negative net worth of approximately $2,500,000.

126.    On October 2, 2023, David and Drew Sanford informed Jim Morris that James River Manufacturing would need to close due to this insolvency if the parties could not reach an agreement to settle. Exhibit C.

127.    Without notification to Drew or David Sanford, Jim Morris, Paul Freeman, PBack Holdings II, LLC, Southern Bank, and unknown John Does began negotiating to purchase the debt of the LLCs.

128.    PBack Holdings II, LLC purchased the debt of the LLCs from Southern Bank on or about December 22, 2023.

129.    On January 2, 2024, Jim Morris and PBack Holdings II, LLC promised to renew the LLC's financing to allow the LLCs to operate.

130.    PBack Holdings II, LLC never renewed the financing to allow the LLCs to operate.

### **Defendants Are Culpable Persons**

131.     Jim Morris is a culpable person under 18 U.S.C. § 1961(3) because he is an individual capable of holding both a legal and beneficial interest in property.

132.     Paul Freeman is a culpable person under 18 U.S.C. § 1961(3) because he is an individual capable of holding both a legal and beneficial interest in property.

133.     PBack Holdings II, LLC is a culpable person under 18 U.S.C. § 1961(3) because it is an individual capable of holding both a legal and beneficial interest in property.

134.     TRock Holdings, LLC is a culpable person under 18 U.S.C. § 1961(3) because it is an individual capable of holding both a legal and beneficial interest in property.

135.     Southern Bank is a culpable person under 18 U.S.C. § 1961(3) because it is an individual capable of holding both a legal and beneficial interest in property.

136.     Baitworkx, LLC is a culpable person under 18 U.S.C. § 1961(3) because it is an individual capable of holding both a legal and beneficial interest in property.

137.     Ozark Shores, LLC is a culpable person under 18 U.S.C. § 1961(3) because it is an individual capable of holding both a legal and beneficial interest in property.

138.     John Does 1-10 are culpable persons under 18 U.S.C. § 1961(3) because he is an individual capable of holding both a legal and beneficial interest in property.

## Defendants Are a RICO Enterprise

139.     Jim Morris owns a minority interest in each of the LLCs.

140.     Paul Freeman, through his ownership in TRock Holdings owns a minority interest in some of the LLCs.

141.     Paul Freeman has derived most of his income from Paul Freeman, the LLCs, or other companies owned by Jim Morris.

142.     Jim Morris owns PBack Holdings II, Baitworkx, and Ozark Shores.

143.     Paul Freeman has an established pattern of working with business owners to extract income and property for himself, as more fully set forth in the case and $2,000,000 judgment rendered in *White v. Paul Freeman, et al,* Case No. 8:14-CV-02957, from the United States District Court, Middle District of Florida.

144.     Paul Freeman has an established pattern of committing fraud in support of his business goals.

145.      Jim Morris and Paul Freeman wish to take 100% of the ownership of the LLCs or their assets without any payment to David or Drew Sanford for their ownership interest.

146.     Jim Morris and Paul Freeman and PBack Holdings II used the assets of Jim Morris, Communication Solutions, LLC and the LLCs to finance the previous goals of Jim Morris and Paul Freeman.

147.     Jim Morris and Paul Freeman and BaitWorkx, LLC and Ozark Shores, LLC worked to take the business of the parties' LLCs.

148.     Jim Morris refused to execute Southern Bank credit extensions and loan guaranties in furtherance of the enterprises' goals.

149.     Jim Morris refused to accept the September Funding Commitment for the Propane Companies in furtherance of the enterprises' goals.

150.     Jim Morris refused to accept the Green LP Offer in furtherance of the enterprises' goals.

151.     Jim Morris and Paul Freeman and PBack Holdings II worked with Southern Bank to use the assets of Jim Morris and the LLCs to finance their goals.

152.     Jim Morris and Paul Freeman and PBack Holdings II are not together a legal entity.

153.    Jim Morris and Paul Freeman and PBack Holdings II have the common purpose of acquiring the assets and businesses of the LLCs.

154.    Jim Morris and Paul Freeman and PBack Holdings II have a common enterprise that existed in the past and will continue to exist in the future independent of the racketeering acts described herein.

155.    Jim Morris and Paul Freeman and PBack Holdings II affect interstate commerce. Each used wire and/or mail services to carry out their actions.

156.    Jim Morris instructed his counsel, and his company, Communications Solutions, LLC, to file, on behalf of himself and his company, allegations stating cause of actions related to accounting services provided by David Sanford (Accounting Petition) containing allegations of multiple false claims and statements, which Defendants have publicized in general and to business associates and customers of David Sanford, Drew Sanford, and the LLCs.

**COUNT I**
**BREACH OF FIDUCIARY DUTY**

157.    Plaintiffs incorporate by reference the preceding paragraphs as if fully stated herein.

158.    Defendant Jim Morris, as a member of each of the LLCs. Exhibit G.

159.    Jim Morris owed a fiduciary duty under Missouri law to David Sanford and Drew Sanford as members of the LLCs, as co-guarantors of loans, and as business partners.

160.    Jim Morris breached his fiduciary duty to David Sanford and Drew Sanford by willfully:

   a.  Failing and refusing to sign the loan renewals and guaranties for the LLCS in August 2023 as required by Legacy Bank and Southern Bank,

b. Causing each of the LLCs to breach and be in default of their loan agreements to Southern Bank and Legacy Bank,

c. Keeping secret from David Sanford and Drew Sanford that he intended to purchase and not repay or make current the loans to Southern Bank and Legacy Bank,

d. Failing to pursue the business of each of the LLCs,

e. Failing to protect the company assets of the LLCs,

f. Disposed of the company assets of the LLCs in a way that caused harm to the company,

g. Purposefully caused harm to the LLCs in order to harm David Sanford and Drew Sanford,

h. Hiring Paul Freeman and providing him access to all of the LLC trade secrets,

i. Causing Plaintiffs to default and breach some of their guaranties to Southern Bank, now Pback Holdings II, LLC

j. Purchasing the loans and guaranties of the LLC debt through a company he owns, PBack Holdings II, LLC, and

k. Causing the failure of the LLCs,

161.    David Sanford and Drew Sanford have been uniquely harmed by Jim Morris' breach of duties, because:

a. David Sanford and Drew Sanford have been induced to sign personal guaranties of the LLC debt based on Jim Morris' ongoing fiduciary duty,

b. David Sanford and Drew Sanford have been denied credit and loans based on the outstanding personal guaranties,

c. Jim Morris, through his personal counsel, Neale Newman, and company, PBack Holdings II, LLC have demanded payments under the personal guaranties in excess of $75,000.

d. David Sanford and Drew Sanford have suffered a decrease in value of their ownership interests in the LLCs in excess of $75,000.

162.     Jim Morris purchased the personal guaranties of David Sanford and Drew Sanford using a company he owns, PBack Holdings II, LLC, only after breaching his fiduciary duties to David Sanford and Drew Sanford.

WHEREFORE, Plaintiffs prays this Court for judgment in favor of Plaintiffs against Defendant Jim Morris for an award of fair and reasonable damages in an amount to be determined at trial, for interest on that sum, court costs, and for such other relief as this Court deems just and proper.


## COUNT II
## FRAUD

163.     Plaintiffs incorporate by reference the preceding paragraphs as if fully stated herein.

164.     Defendant Jim Morris made written representations that he would sign guaranties and loan renewals for each of the LLCS. Exhibit F

165.     Every year the LLCs renewed the loans, Jim Morris represented he would sign guaranties and loan renewals for each of the LLCs. See, Exhibit G.

166.     Jim Morris and PBack Holdings II, LLC represented it would renew the loans to the LLCs in writing on or about January 2, 2024.

167.     Jim Morris and PBack Holdings II, LLC's statements were false at the time they made them and have been proven false by:

a. Jim Morris's failing and refusing to sign the loan renewals and guaranties for the LLCS in August 2023 as required by Legacy Bank and Southern Bank,

b. Causing each of the LLCs to breach and be in default of their loan agreements to Southern Bank and Legacy Bank,

c. Purchasing the loans and guaranties of the LLC debt through a company he owns, PBack Holdings II, LLC,

d. Failing and refusing to renew the loans to the LLCs, and

e. Causing the failure of the LLCs,

168. Each of the statements by Jim Morris and PBack Holdings II, LLC were material in that the falsity of the statements resulted in the failure of the LLCs.

169. Each of the plaintiffs did not know that the statements were false.

170. Each of the plaintiffs relied on the representations as being true.

171. Each of the plaintiffs had no reason to believe Jim Morris or PBack Holdings II, LLC was lying.

172. Each of the plaintiffs had a right to rely on Jim Morris and PBack Holdings II, LLCs written statements, oral statements, and statements through counsel.

173. Plaintiffs have harmed by Jim Morris' breach of duties, because:

a. David Sanford and Drew Sanford have been induced to sign personal guaranties of the LLC debt based on Jim Morris' ongoing fiduciary duty,

b. David Sanford and Drew Sanford have been denied credit and loans based on the outstanding personal guaranties,

c. Jim Morris, through his personal counsel, Neale Newman, and company, PBack Holdings II, LLC have demanded payments under the personal guaranties in excess of $75,000.

d. David Sanford and Drew Sanford have suffered a decrease in value of their ownership interests in the LLCs in excess of $75,000.

e. Plaintiffs are in default and have breached some of their guaranties to Southern Bank, now Pback Holdings II, LLC

WHEREFORE, Plaintiffs prays this Court for judgment in favor of Plaintiffs against Defendant Jim Morris for an award of fair and reasonable damages in an amount to be determined at trial, for interest on that sum, court costs, and for such other relief as this Court deems just and proper.

## COUNT III
## TORTIOUS INTERFERENCE

174. Plaintiffs incorporate by reference the preceding paragraphs as if fully stated herein.

175. Defendant Jim Morris used Pback Holdings II, LLC to interfere with the banking and lending relationship between Southern Bank and the LLCs and Plaintiffs.

176. Jim Morris and Pback Holdings II, LLC purchased the Southern Bank loans made to the LLCS on or about December 22, 2023.

177. Jim Morris and Pback Holdings II, LLC purchased some of the plaintiffs' guaranties on the Southern Bank loans made to the LLCS on or about December 22, 2023.

178. Jim Morris and PBack Holdings II, LLC falsely represented it would renew the loans to the LLCs in writing on or about January 2, 2024.

179.     Jim Morris and Pback Holdings II, LLC did not purchase the loans and guaranties of Southern Bank for the purpose of extending credit to the LLCs and allowing the LLCs to operate as going concerns.

180.     Jim Morris and Pback Holdings II, LLC did not extend any new credit to the LLCs.

181.     Jim Morris and Pback Holdings II LLC demanded repayment of all the loans from the LLCs and some of the guarantors on or about April 16, 2024.

182.     Jim Morris and Pback Holdings II, LLC knew this would bankrupt and end the LLCs operations as going concerns.

183.     Jim Morris and Pback Holdings II, LLC knew this would bankrupt each of the Plaintiffs.

184.      Jim Morris and Pback Holdings II, LLC intentionally ended the long-running business relationship between Southern Bank and the LLCs and the plaintiffs.

185.     Jim Morris caused the relationship between Southern bank and the LLCs and plaintiffs to deteriorate and the LLCs and plaintiffs to breach and be in default of their contracts with Southern Bank when he refused to sign loan extensions and guaranties in August 2023.

186.     Plaintiffs have harmed by Jim Morris and Pback Holdings II, LLC, because:

    a.  David Sanford and Drew Sanford have been induced to sign personal guaranties of the LLC debt based on Jim Morris' ongoing fiduciary duty,

    b.  David Sanford and Drew Sanford have been denied credit and loans based on the outstanding personal guaranties,

c. Jim Morris, through his personal counsel, Neale Newman, and company, PBack Holdings II, LLC have demanded payments under the personal guaranties in excess of $75,000.

d. David Sanford and Drew Sanford have suffered a decrease in value of their ownership interests in the LLCs in excess of $75,000.

e. Plaintiffs are in default and have breached some of their guaranties to Southern Bank, now Pback Holdings II, LLC.

WHEREFORE, Plaintiffs prays this Court for judgment in favor of Plaintiffs against Defendant Jim Morris for an award of fair and reasonable damages in an amount to be determined at trial, for interest on that sum, court costs, and for such other relief as this Court deems just and proper.

## COUNT IV
### VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATION ACT (18 U.S.C.A. § 1962) – MAIL (18 U.S.C.A. § 1341) AND WIRE FRAUD (18 U.S.C.A. § 1343)

187. Plaintiffs incorporate by reference the preceding paragraphs as if fully stated herein.

188. Jim Morris and Paul Freeman and PBack Holdings II formed an enterprise engaged in and whose activities affect interstate commerce.

189. Jim Morris and Paul Freeman and PBack Holdings II are culpable persons.

190. All defendants are members of the enterprise.

191. Jim Morris and Paul Freeman and PBack Holdings II had and have a plan or scheme to defraud David Sanford and Drew Sanford. Specifically, their plan or scheme include the following acts and elements:

a. The common purpose of Defendants' plan or scheme to defraud David Sanford and Drew Sanford was to pressure, harass, embarrass, and injury David Sanford through fraudulent statements and claims to force David Sanford to lose investment and accounting clients and income so that Defendants could take 100% of the ownership of the LLCs or their assets without any payment to David or Drew Sanford for their ownership interest.

b. Defendant Jim Morris began his plan when hiring Paul Freeman in 2020, who had experience committing fraud in his business activities, in order to enact his plan.

c. Defendants used Spaces to take money from the LLCs, require the other LLCs to complete the Spaces construction work, and limit the ability of the LLCs to operate their businesses.

d. Defendants used BaitWorkx, LLC and Ozark Shores, LLC to take money from the LLCs, require the other LLCs to finance the LLCs, take business from the parties' LLCs, and limit the ability of the LLCs to operate their businesses.

e. Defendants charged their attorneys, Neale Newman, through mail and wire communications (mail, email, and text messages) to collect records and information from Plaintiffs and the LLCs regarding the history of the LLCS for the purposes of finding information Defendants could use to pressure David Sanford and Drew Sanford to relinquish their ownership in the LLCs with no payments for the ownership.

f. Defendants expressly outlined the pressure they would assert against David Sanford and Drew Sanford.

g. Defendants authorized their attorneys, Neale Newman, to threaten David Sanford, including criminal charges, unless David Sanford and Drew Sanford surrendered 100% of the ownership of the LLCs or their assets without any payment.

h. Jim Morris refused to execute Southern Bank and Legacy Bank credit extensions and loan guaranties in furtherance of the enterprises' goals.

i. Jim Morris refused to accept the September Funding Commitment for the Propane Companies in furtherance of the enterprises' goals.

j. Jim Morris refused to accept the Green LP Offer in furtherance of the enterprises' goals.

k. PBack Holdings, Jim Morris, and Paul Freeman attempted to collect the debts from the LLCs and personal guarantees only after refusing to execute Southern Bank and Legacy Bank credit extensions and loan guaranties, accept the September Funding Commitment for the Propane Companies, the Green LP Offer.

l. Jim Morris, Paul Freeman, PBack Holdings II, LLC, Southern Bank and Legacy Bank, and unknown John Does to use limited financial resources to benefit Jim Morris at the expense of David and Drew Sanford.

m. Jim Morris, Paul Freeman, PBack Holdings II, LLC, Southern Bank and Legacy Bank, and unknown John Does to use limited financial resources to purchase the debt of the companies from Southern Bank.

n. Neither Jim Morris, Paul Freeman, PBack Holdings II, LLC, Southern Bank, nor unknown John Does informed David Sanford or Drew Sanford that they were negotiating to purchase the debt of the companies.

o. Defendants Jim Morris, Paul Freeman, PBack Holdings II, LLC, Southern Bank, and unknown John Does began negotiating with Southern Bank to purchase the debt of the LLCs.

p. PBack Holdings II, LLC purchased the debt of the LLCs from Southern Bank on or about December 22, 2023.

192. Jim Morris and Paul Freeman and PBack Holdings II undertook multiple predicate acts in furtherance of their plan or scheme to defraud David Sanford and Drew Sanford:

a. By use of wire communications (e-mail, text and telephone), Defendant Jim Morris hired Paul Freeman, who had experience committing fraud in his business activities, in order to enact his plan.

b. By use of wire communications (e-mail, text and telephone), Jim Morris and Paul Freeman used Spaces to take money from the LLCs, require the other LLCs to complete the Spaces construction work, and limit the ability of the LLCs to operate their businesses.

c. By use of wire communications (e-mail, text and telephone), Jim Morris and Paul Freeman used Baitworkx, LLC and Ozark Shores, LLC to take money from the LLCs, require the other LLCs to finance the LLCs, and limit the ability of the LLCs to operate their businesses.

d. Defendants charged their attorneys, Neale Newman, through mail and wire communications (mail, email, and text messages) to collect records and information from Plaintiffs and the LLCs regarding the history of the LLCS for the purposes of finding information Defendants could use to pressure David Sanford and Drew

Sanford to relinquish their ownership in the LLCs with no payments for the ownership.

e.  By use of wire communications (e-mail, text and telephone), Defendants expressly outlined the pressure they would assert against David Sanford and Drew Sanford.

f.  By use of wire communications (e-mail, text and telephone), Neale Newman threatened David Sanford, including criminal charges, unless David Sanford and Drew Sanford surrendered 100% of the ownership of the LLCs or their assets without any payment.

g.  By use of wire communications (e-mail, text and telephone), Defendants instructed their attorneys to file lawsuits against David Sanford and Drew Sanford for the purpose of publicly pressuring, harassing, embarrassing, and injuring David Sanford and Drew Sanford.

h.  By use of wire communications (e-mail, text and telephone), Jim Morris and Paul Freeman communicated with customers of MS Propane to tell the customers of MS Propane that the company was going out of business.

i.  By use of wire communications (e-mail, text and telephone), Jim Morris and Paul Freeman communicated allegations to business associates and customers of David Sanford, Drew Sanford, and the LLCs.

j.  By use of wire communications (e-mail, text and telephone), Jim Morris refused to execute Southern Bank credit extensions and loan guaranties in furtherance of the enterprises' goals.

k.  By use of wire communications (e-mail, text and telephone), Jim Morris refused to accept the September Funding Commitment for the Propane Companies in furtherance of the enterprises' goals.

l.  By use of wire communications (e-mail, text and telephone), Jim Morris refused to accept the Green LP Offer in furtherance of the enterprises' goals.

m.  By use of wire communications (e-mail, text and telephone), PBack Holdings, Jim Morris, and Paul Freeman attempted to collect the debts from the LLCs and personal guarantees only after refusing to execute Southern Bank credit extensions and loan guaranties, accept the September Funding Commitment for the Propane Companies, the Green LP Offer.

n.  By use of wire communications (e-mail, text and telephone), Jim Morris, Paul Freeman, PBack Holdings II, LLC, and unknown John Does communicated with Southern Bank for the purpose of using limited financial resources to benefit Jim Morris at the expense of David and Drew Sanford.

o.  By use of wire communications (e-mail, text and telephone), Jim Morris, Paul Freeman, PBack Holdings II, LLC, and unknown John Does communicated with Southern Bank for the purpose of using limited financial resources to purchase the debt of the companies from Southern Bank.

p.  By use of wire communications (e-mail, text and telephone), Jim Morris and Paul Freeman used Baitworkx, LLC and Ozark Shores, LLC to take money from the LLCs, require the other LLCs to finance the LLCs, and limit the ability of the LLCs to operate their businesses.

q. By use of wire communications (e-mail, text and telephone), Defendants Jim Morris, Paul Freeman, PBack Holdings II, LLC, Southern Bank, and unknown John Does began negotiating with Southern Bank to purchase the debt of the LLCs.

r. By use of wire communications (e-mail, text and telephone), PBack Holdings II, LLC purchased the debt of the LLCs from Southern Bank on or about December 22, 2023.

193. Defendants intended to defraud David Sanford and Drew Sanford and force them to relinquish their ownership interests in the LLCs and assets of the LLCs with no payment.

194. Defendants knew the falsity of their statements and claims.

a. Defendants knew Spaces had not completed the construction and diverted funds, as outlined above.

b. Defendants knew Baitworkx, LLC and Ozark Shores, LLC were purchasing the LLCs' inventory, usurping LLC sales, and harming LLC business.

c. Defendants knew MS Propane was not going out of business when they told MS Propane customers that the company was going out of business.

d. Jim Morris knew his refusal to execute Southern Bank credit extensions and loan guaranties, September Funding Commitment for the Propane Companies, and Green LP Offer in furtherance of the enterprises' goals was a violation of the LLC's operating agreements, fiduciary duties, would benefit defendants, specifically PBack Holdings II, Jim Morris, and Paul Freeman, and not in the best interest of the LLCs.

e. Defendants knew PBack Holdings II's attempt to collect the debts from the LLCs and personal guarantees only after refusing to execute Southern Bank credit

extensions and loan guaranties, accept the September Funding Commitment for the Propane Companies, the Green LP Offer would benefit defendants, specifically PBack Holdings II, Jim Morris, and Paul Freeman, and not in the best interest of the LLCs.

195.    Defendants agreed to and conducted and participated in the pattern of racketeering activity for the unlawful purpose of defrauding Plaintiffs by use of the mails or wires.

196.    Defendant racketeering predicate acts demonstrate a pattern because they are related to and pose a threat of continued mail and wire fraud. Specifically, Defendants' continuity of racketeering predicate acts creates close-ended continuity because they began in late 2021 and continued through to the present, a period of over 3 years. During that time, Defendants repeated various mail and electronic frauds, as described above, including but not limited to the following:

   a. Mail and wire fraud to repeatedly engage customers and associates of the Plaintiffs as a means to publicly pressure, embarrass, harass, and injure Plaintiffs;

   b. Mail and wire fraud to repeatedly allege in public forums that David Sanford engaged in accounting malpractice for the purpose of pressuring, embarrassing, harassing, and injuring David Sanford;

   c. Mail and wire fraud to divert customers and funds from the LLCs for the purpose of taking the assets and companies from David Sanford and Drew Sanford without payment;

   d. Mail and wire fraud to divert funds from the LLCs and starve the LLCs of credit and cash for the purpose of limiting the LLC's ability to conduct business.

197.    Each of the Defendants' racketeering predicate acts of mail and wire fraud have directly and proximately caused the same series of ongoing injuries to Plaintiffs' business, property, cash, and income, because each of the predicate acts used the same tactics (i.e., fraud to pressure, harass, embarrass, and injure Plaintiffs) and each of the predicate acts of mail and wire fraud were directed to accomplish the same purpose (i.e., deceiving the public in order to pressure Plaintiffs' and the LLCs' customers to leave Plaintiffs and the LLCs thus forcing the Sanfords to relinquish their interest in the LLCs for no compensation.

198.    Plaintiffs' injuries to its business and property commenced in 2020 when Jim Morris hired Paul Freeman to begin diverting assets from the LLC's, made statements to injure Plaintiffs, and the injuries suffered are ongoing.

199.    Plaintiffs' injuries to its business and property include, but are not limited to, the following:

a.  Injury to Plaintiffs' income by spreading false rumors;

b.  Injury to Plaintiffs' goodwill with its customers, as a whole;

c.  Injury to a reduction in the value of plaintiffs' value in the LLCs;

d.  Preventing Plaintiffs from obtaining credit and loans;

e.  Causing plaintiffs to default and breach some of their guaranties to Southern Bank, now Pback Holdings II, LLC

f.  Causing a destruction of the value and income of the LLCs resulting in the possibility of a deficiency in the loans due to PBack Holdings II that would not have been due had defendants not conspired to steal from Spaces, Boatworkx, and failure to take full payoffs from the Propane Company loans.

WHEREFORE, Plaintiffs seeks judgment against Defendants on Count I of this Complaint and that the Court award Plaintiffs actual damages, treble damages, attorneys' fees, disallow enforcement of any loan agreements and guarantees for the debt, expenses and costs, and such other and additional relief as may be just and proper under the circumstances.

## COUNT V

### VIOLATION OF THE RACKETEER INFLUENCE AND CORRUPT ORGANIZATIONS ACT

### 18 U.S.C. § 1962(D) --- CONSPIRACY (ALL DEFENDANTS)

200.    Plaintiffs incorporate by reference the preceding paragraphs as if fully stated herein.

201.    Defendants agreed and conspired to violate 18 U.S.C. § 1962(c), mail, wire and bank fraud, by participating in an enterprise engaged in a pattern of racketeering activity, as described above.

202.    Defendants intentionally conspired and agreed to participate in an enterprise through a pattern of racketeering activities in which they knew their predicate racketeering acts were a part of that pattern activities and agreed to the commission of those acts to further the scheme or plan, as described above.

203.    Defendants each took multiple overt predicate racketeering acts, as described above.

204.     As a direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Plaintiffs have suffered injuries to its business and property.

   a.  Injury to Plaintiffs' income by spreading false rumors;

   b.  Injury to Plaintiffs' goodwill with its customers, as a whole;

   c.  Injury to a reduction in the value of plaintiffs' value in the LLCs;

   d.  Preventing Plaintiffs from obtaining credit and loans;

   e.  Causing plaintiffs to default and breach some of their guaranties to Southern Bank, now Pback Holdings II, LLC

   f.  Causing a destruction of the value and income of the LLCs resulting in the possibility of a deficiency in the loans due to PBack Holdings II that would not have been due had defendants not conspired to steal from Spaces, Boatworkx, and failure to take full payoffs from the Propane Company loans.

WHEREFORE, Plaintiffs seeks judgment against Defendants on Count I of this   Complaint and that the Court award Plaintiffs actual damages, treble damages, attorneys' fees, disallow enforcement of any loan agreements and guarantees for the debt, expenses and costs, and such other and additional relief as may be just and proper under the circumstances.

### COUNT VI

### VIOLATION OF FEDERAL ANTITRUST LAW, 15 U.S.C.A. § 1

205.     Plaintiffs incorporate by reference the preceding paragraphs as if fully stated herein.

206.     The Sherman Act provides that every "contract, combination in the form of trust or otherwise or conspiracy in restraint of trade or commerce…is declared to be illegal." 15 U.S.C.A. § 1.

207. Paul Freeman and Jim Morris obtained trade secrets and confidential information from MS Propane consisting of customer lists and order information.

208. Paul Freeman and Jim Morris obtained trade secret and confidential information from Boat Worx, LLC consisting of customer lists, order information, supplier and vendor information, and confidential business plans.

209. Paul Freeman and Jim Morris obtained trade secret and confidential information from the LLCs and Southern Bank consisting of loan amounts, financial information, payment schedules, and confidential communications regarding loans and business.

210. Despite knowing that Paul Freeman and Jim Morris obtained trade secrets and confidential information of the LLCs, Paul Freeman and Jim Morris shared that information with PBack Holdings II, LLC, Baitworkx, LLC, and Ozark Shores, LLC in order to obtain competitive advantage over each of the LLCs by stealing the LLC's finances, stealing and soliciting the LLC's customers and to Defendants.

211. Paul Freeman, Jim Morris, Baitworkx, LLC, and Ozark Shores, LLC conspired to lessen the competition in the marketplace and failed to promote fair competition by using the confidential information Paul Freeman, Jim Morris, Baitworkx, LLC, and Ozark Shores, LLC wrongfully obtained from the LLCs in violation of federal law.

212. Paul Freeman, Jim Morris, PBack Holdings II, LLC conspired to lessen the competition in the marketplace and failed to promote fair competition by using the confidential information to drive the LLCs out of business in violation of federal law.

213. The aforementioned acts of Defendants lessened competition for obtaining business from customers.

214.    Plaintiffs and the LLCs were injured in their business through not being able to fairly compete for its customers as a result of Defendants violations.

215.    Plaintiffs were injured monetarily as a result of Defendants driving the LLCs out of business.

216.    Pursuant to federal law, Plaintiffs are entitled to threefold damages that plaintiffs sustained as a result of the aforementioned conduct and as award of reasonable attorneys' fees as determined by the Court.

WHEREFORE, Plaintiffs seeks judgment against Defendants on Count III of this Complaint and that the Court award Plaintiffs actual damages, treble damages, attorneys' fees, disallow enforcement of any loan agreements and guarantees for the debt, expenses and costs, and such other and additional relief as may be just and proper under the circumstances.

## COUNT VII

### CIVIL CONSPIRACY (ALL DEFENDANTS)

217.    Plaintiffs incorporate by reference the preceding paragraphs as if fully stated herein.

218.    Defendants agreed and conspired to defraud Plaintiffs, as described above.

219.    Defendants reached a meeting of the minds to defraud Plaintiffs, as evidenced by their joint decision to proceed immediately thereafter, and as otherwise more fully described above.

220.    Each of the Defendants committed multiple acts in furtherance of the conspiracy, as described above.

221.    Defendants' acts in furtherance of the conspiracy were intentional, as more fully described above.

222.    As a direct and proximate result of Defendants' conspiracy, Plaintiffs has suffered injuries to its business and property.

223.    Plaintiffs' injuries include, but are not limited to, the following:

    (1) Injury to Plaintiffs' income by spreading false rumors;

    (2) Injury to Plaintiffs' goodwill with its customers, as a whole;

    (3) Injury to a reduction in the value of plaintiffs' value in the LLCs;

    (4) Preventing Plaintiffs from obtaining credit and loans;

    (5) Causing plaintiffs to default and breach some of their guaranties to Southern Bank, now Pback Holdings II, LLC

    (6) Causing a destruction of the value and income of the LLCs resulting in the possibility of a deficiency in the loans due to PBack Holdings II that would not have been due had defendants not conspired to steal from Spaces, Boatworkx, and failure to take full payoffs from the Propane Company loans.

    2.    Defendants conduct was outrageous because of Defendants' evil motive toward Plaintiffs or their reckless indifference to Plaintiffs' rights such that punitive damages should be awarded to punish Defendants and to deter Defendants and others from like conduct in the future.

    WHEREFORE, Plaintiffs seeks judgment against Defendants on Court IV of this Complaint and that the Court award Plaintiffs actual damages, punitive damages, and such other and additional relief as may be just and proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. Pro. 38 and Local Rule 38.1, Plaintiffs respectfully requests that this case be set by the Court for a jury trial on all claims raised herein.

WALLACE SAUNDERS, P.C.

BY: _/s/ Bryan E. Mouber_____
John M. Ross        MO 44051
Bryan E. Mouber   MO 49388
Gregory M. Bentz  MO 33369
10111 West 87th Street
Overland Park, KS 66212
(913) 888-1000
FAX - (913) 888-1065
jross@wallacesaunders.com
bmouber@wallacesaunders.com
gbentz@wallacesaunders.com

ATTORNEYS FOR PLAINTIFFS