IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DAVID SANFORD, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Case No. 6:24-cv-03124-MDH |
| ) | |
| JIM MORRIS, et al., ) | |
| ) | |
| Defendants. ) | |

## ORDER

Before the Court is Defendants' Motion to Dismiss Counts II, III, IV, V, VI and VII of Plaintiffs' Third Amended Complaint. (Doc. 50). Defendants filed suggestions in support (Doc. 51), Plaintiffs filed suggestions in opposition (Doc. 52) and Defendants have filed a reply. (Doc. 53). The motion is now ripe for adjudication on the merits. For the reasons stated herein, Defendants' Motion to Dismiss is **DENIED**.

## BACKGROUND

This litigation arises from the breakdown and alleged misappropriation of funding of a joint business dealings between Plaintiffs David and Drew Sanford and Defendants Jim Morris and Paul Freeman. Plaintiff David Sanford is a resident of Polk County, Missouri. Plaintiff Drew Sanford is a resident of Greene County, Missouri. Plaintiff Revocable Trust Agreement of David K. Sanford is a resident of Missouri. Plaintiff Joint Revocable Trust Agreement of David K. Sanford and Melissa K. Sanford is a resident of Missouri. Defendant Jim Morris is a resident of Greene County, Missouri. Defendant Paul Freeman is a resident of Greene County, Missouri. Defendant TRock holdings, LLC is a Missouri LLC. Defendant Communication Solutions LLC is a Missouri LLC. Defendant PBack Holdings, LLC is Missouri LLC. Defendant PBack Holdings,

1

II, LLC is a Missouri LLC. Defendant JM Construct, LLC is a Missouri LLC. Defendant PF Construct, LLC is a Missouri LLC. Defendant Spaces Electric, LLC is a Missouri LLC. Defendant HWYKK Construct, LLC is a Missouri LLC. Defendant HWYKK, LLC is a Missouri LLC. Defendant Highland Restoration, LLC is a Missouri LLC. Defendant Ozark Shores Boar Company, LLC is a Missouri LLC. Defendant John Does 1-100 are individuals and entities who have worked with Paul Freeman, Jim Morris, PBack Holdings, LLC, PBack Holdings II, LLC, or TRock Holdings, LLC. Defendant Boat Workx, LLC is a Missouri LLC.

Plaintiffs David and Drew Sanford own multiple LLCs together ("shared LLCs") with Defendant Jim Morris. Defendant Paul Freeman, through his company TRock holdings, LLC also owns membership in companies with the Sanford Plaintiffs and Defendant Jim Morris. In 2022, The Sanford Plaintiffs became aware that Paul Freeman was found liable in a fraud and deceptive trade practices case for $2,000,000 in damages. The parties business relationship deteriorated after Plaintiffs' knowledge of Defendant Freeman's past fraud. Plaintiffs allege that Defendants Freeman and Morris began planning to take the LLCs and the assets of the LLCs from Plaintiffs with no compensation.

Plaintiffs allege that Defendants Freeman and Morris formed 4050 Penn KC, LLC without David Sanford's knowledge and forged his signature on the 4050 Penn KC, LLC Operating Agreement using a stamp Defendant Freeman stole. Plaintiffs further allege that Defendant Morris refused to sign loan renewals or guaranties in order to starve the shared LLCs of cash. Next, Plaintiffs allege Defendants stopped construction and diverted money from the shared LLC construction companies in order to require individual shared LLCs to pay to fix and compete construction defects and force the LLCs to operate in incomplete buildings, requiring the shared LLCs to expend more cash and borrow from Plaintiffs. Plaintiffs also allege Defendants formed

their own companies and stole trade secrets and intellectual property from the shared LLCs, sold shared LLC assets and inventory to the Defendants' companies at below-market rates, and operated their own companies using intentionally similar names to compete with the shared LLCs, and destroy the shared LLC businesses. Lastly, Plaintiffs allege Defendants coordinated to use PBack Holdings to purchase the debt of the shared LLCs in order to acquire the assets of the shared LLCs without payment to Plaintiffs and to force Plaintiffs to pay loan deficiencies created by Defendants' destruction of the shared LLCs. Plaintiffs bring seven counts based on their allegations: Count I – Breach of Fiduciary Duty; Count II – Fraud; Count III – Tortious Interference; Count IV – Violation of the Racketeer Influenced and Corrupt Organization Act (18 U.S.C. § 1962) – Mail (18 U.S.C. § 1341) and Wire Fraud (18 U.S.C. § 1343); Count V – Violation of the Racketeer Influence and Corrupt Organizations Act 18 U.S.C. § 1962(D) --- Conspiracy; Count VI – Violation of Federal Antitrust Law, 15 U.S.C. § 1; and Count VII – Civil Conspiracy.

Defendants bring their current motion arguing Counts II and III are barred as matter of law because of the economic loss doctrine. Defendants further argue that Counts II, III, IV, V and VI fail based on insufficient pleading of facts to support those respective counts. Lastly, Defendants argue that Count VII must fail for the same reasons that Count II fails as Civil Conspiracy is not a distinct and independent cause of action. The Court will take each argument in turn.

**STANDARD OF REVIEW**

A complaint must contain factual allegations that, when accepted as true, are sufficient to state a claim of relief that is plausible on its face. *Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (internal citations omitted). The

3

complaint's factual allegations must be sufficient to "raise a right to relief above the speculative level," and the motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp v. Twombly*, 550 U.S. 544, 545 (2007). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## ANALYSIS

I. **Count II – Fraud**

  A. **Economic Loss Doctrine**

Defendants argue that Count II is based on the Missouri tort law claim of fraud arising out of the parties' contracts. Defendants assert that this claim must be barred because the economic loss doctrine prohibits a plaintiff from recovering on tort claims when the subject matter of the alleged misrepresentation was part of the contract. Plaintiffs argue that the Eighth Circuit has held that Missouri law expressly limits the economic loss doctrine to warranty and negligence or strict liability claims and thus it is inapplicable in the current case. Plaintiffs additionally argue that they have alleged fraud claims against Defendant Morris outside of the contract, and that Defendant Morris had an independent duty in addition to the contract.

"The economic loss doctrine prohibits a commercial buyer of goods 'from seeking to recover in tort for economic losses that are contractual in nature.'" *Nestle Purina Petcare Co. v. Blue Buffalo Co. Ltd.*, 181 F. Supp. 3d 618, 638 (E.D. Mo. 2016) (quoting *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 905–06 (8th Cir. 2013)). "Recovery in tort is limited to cases in which there has been personal injury, or property damage either to property other than the

4

property sold, or to the property sold when it is rendered useless by some violent occurrence." *Steadfast Ins. Co. v. ARC Steel, LLC*, No. 16-3214-CV-S-SRB, 2019 WL 2090696, at *3 (W.D. Mo. May 13, 2019) (quoting *Rockport Pharmacy, Inc. v. Digital Simplistics, Inc.*, 53 F.3d 195, 198–99 (8th Cir. 1995)). "In essence, the economic loss, or commercial loss, doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations." *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 906 (8th Cir. 2013).

However, "[w]here the parties have entered into a contract, our common law has imposed the duty to perform with skill, care, and reasonable expedience and faithfulness in regard to the thing to be done or accomplished within the contract. The negligent failure to observe and perform any portion of that duty gives rise to an action in tort as well as an action for breach of contract." *Autry Morlan Chevrolet Cadillac, Inc. v. RJF Agencies, Inc.*, 332 S.W.3d 194, 193 (Mo. Ct. App. 2010) (quoting *Am. Mortg. Inv. Co. v. Hardin-Stockton Corp.*, 671 S.W.2d 283, 293 (Mo. Ct. App. 1984)). Missouri law has limited "this doctrine to warranty and negligence or strict liability claims." *Dunne v. Res. Converting, LLC*, 991 F.3d 931, 943 (8th Cir. 2021) (quoting *Vogt v. State Farm Life Insurance Co.*, 963 F.3d 753, 774 (8th Cir. 2020)). "[T]he economic loss doctrine does not 'categorically' bar fraud and misrepresentation claims that arise in cases involving contractual relationships[.]" *Rollstock, Inc. v. SupplyOne, Inc.*, 660 F. Supp. 3d 809, 820 (W.D. Mo. 2023) (quoting *Superior Edge, Inc. v. Monsanto Co.*, 44 F. Supp. 3d 890, 903 (D. Minn. 2014) (applying Missouri law).

Plaintiffs' Count II is not barred by the economic loss doctrine. Here, Plaintiffs' Complaint alleges:

5

> Defendant Jim Morris made written representations that he would sign guaranties and loan renewals for each of the LLCs. Exhibit F1 and Exhibit F2.[1] Every year the LLCs renewed the loans, Jim Morris represented he would sign guaranties and loan renewals for each of the LLCs. See, Exhibit G. Jim Morris and PBack Holdings represented it would renew the loans to the LLCs in writing on or about January 2, 2024. Jim Morris and PBack Holdings represented they would use commercially reasonable means to sell assets in order to pay down and retire the debt and satisfy the personal guarantees of plaintiffs. Jim Morris and PBack Holdings represented they would apply monies received from the sale of assets in a commercially reasonable manner in order to pay down and retire the debt and satisfy the personal guarantees of plaintiffs.

(Complaint ¶¶ 186-190). Exhibits F1, F2 and G are the operating agreements of the various shared LLCs and the Notice and Consent to Renewal by Guarantor. An operating agreement under Missouri law is:

> any valid agreement or agreements, written or oral, among all members, or written declaration by the sole member concerning the conduct of the business and affairs of the limited liability company and the relative rights, duties and obligations of the members and managers, if any[.]

Mo. Rev. Stat. § 347.015.13. An operating agreement is considered a contract under Missouri law. The Operating Agreements of the shared LLCs between Plaintiffs and Defendant Morris hold a provision regarding additional capital contributions and loans which state:

> As may be required by any financial or lending institution, each Member and spouse shall jointly and severally guarantee each Loan which the Company may obtain from such institution, or which has been obtained in the past from such institution, and which does, may or will constitute a lien against Company property. Each member guarantees the other members that they will not require any Member to pay more than that member's proportionate share of any Company debt.

(Doc. 3-6, page 46). While this provision of the operating agreement outlines the subject matter at issue in this count, the economic loss doctrine does not pertain to this particular type of loss. The economic loss doctrine prohibits a buyer of goods from seeking recovery in tort, not a fraud claim based upon the alleged dereliction of duty owed by a member of an LLC to another member.

---

[1] Plaintiff has put the text Exhibit F1, Exhibit F2 and Exhibit G but has failed to file any exhibits along with his Third Amended Complaint. The Court will assume the exhibits meant to be included were the same as those submitted in Plaintiffs' First Amended Complaint (Doc. 3).

Missouri law has limited the economic loss doctrine to those cases seeking warranty and negligence or strict liability claims. Plaintiff's Count II does not fall into any of these categories nor is the economic loss doctrine intended to prevent a tort action occurring outside the UCC in a matter such as this. *See MEA Fin. Enterprises, LLC v. Fiserv Sols., Inc.*, No. 13-05041-CV-SW-BP, 2013 WL 12155467, at *3 (W.D. Mo. Oct. 16, 2013); *Heartland Med., LLC v. Express Scripts, Inc.*, No. 4:17-CV-02873 JAR, 2018 WL 4216669, at *2 (E.D. Mo. Sept. 5, 2018). The Court finds that the economic loss doctrine does not apply to Plaintiffs' fraud claim. For the reasons stated, Defendant's Motion to Dismiss Count II based on the Economic Loss Doctrine is **DENIED**.

### B. Federal Rule of Civil Procedure 9(b)

Defendants argue that Plaintiff's allegations of fraud fail as a matter of law because Plaintiffs fail to plead their allegations with the requisite level of detail as required by Federal Rule of Civil Procedure 9(b). Plaintiffs argue their Complaint contains sufficient facts to support all elements of their claim for fraud.

In order to make a submissible case of fraudulent misrepresentation, a plaintiff must prove nine essential elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of tis falsity or ignorance of its truth; (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. *Hess v. Chase Manhattan Bank, USA, N.A.*, 220 S.W.3d 758, 765 (Mo. 2007) (citing *Herberer v. Shell Oil Co.*, 744 S.W.2d 441, 443 (Mo. banc 1988)). Federal Rule of Civil Procedure 9(b) governs the pleading standard for claims involving fraud or mistake. It states "[i]n alleging fraud or mistake, a party

must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Courts have construed Federal Rule of Civil Procedure 9(b) to require a plaintiff to plead "such facts as the time, place, and content of the defendant's false representations, as well as the details of the defendant's fraudulent acts, including when the acts occurred, who engaged in them, and what was obtained as a result." *Tuter v. Freud Am., Inc.*, No. 4:22-CV-00282-RK, 2022 WL 4636225, at *7 (W.D. Mo. Sept. 30, 2022) (quoting *United States ex rel. Costner v. United States*, 317 F.3d 883, 888 (8th Cir. 2003). When viewed "in the context of the general principle of the Federal Rules, the purpose of which is to simplify pleadings," "[t]he particularity required by Rule 9(b) is intended to enable the defendant to respond specifically and quickly to potentially damaging allegations. *United States ex rel. Joshi v. St. Luke's Episcopal-Presbyterian Hosps.*, No. 4:04CV489 RWS, 2005 WL 8176863, at *1 (E.D. Mo. April 13, 2005).

Plaintiffs have met the pleading standard under Federal Rule of Civil procedure 9(b). Plaintiffs' Compliant alleges:

> Defendant Jim Morris made written representations that he would sign guaranties and loan renewals for each of the LLCs. Exhibit F1 and Exhibit F2. Every year the LLCs renewed the loans, Jim Morris represented he would sign guaranties and loan renewals for each of the LLCs. See, Exhibit G. Jim Morris and PBack Holdings represented it would renew the loans to the LLCs in writing on or about January 2, 2024. Jim Morris and PBack Holdings represented they would use commercially reasonable means to sell assets in order to pay down and retire the debt and satisfy the personal guarantees of plaintiffs. Jim Morris and PBack Holdings represented they would apply monies received from the sale of assets in a commercially reasonable manner in order to pay down and retire the debt and satisfy the personal guarantees of plaintiffs.

(Complaint ¶¶ 186-190). Plaintiffs have provided the operating agreements in the shared LLC's with Defendant Morris and PBack Holdings asserting the written representations that those specific Defendants would sign guaranties and loan renewals for each of the LLCs. (Docs. 3-6 and

8

3-7). Plaintiffs have pleaded with specificity that Defendants Morris and PBack Holdings represented it would renew the loans to the LLCs in writing on or about January 2, 2024.[2] As to Plaintiffs allegation that Defendants Morris and PBack Holdings represented they would use commercially reasonable means to sell assets in order to pay down and retire the debt, the Court finds support for this allegation under the Missouri Revised Statutes. Specifically, Mo. Rev. Stat. § 347.008 defines the standard of duty and extent of liabilities for limited liability companies. It states:

> Except as otherwise provided in the operating agreement an authorized person shall discharge his or her duty under sections 347.010 to 347.187 and the operating agreement in good faith, with the care a corporate officer of like position would exercise under similar circumstance, in the manner a reasonable person would believe to be in the best interest of the limited liability company, and shall not be liable for any such action so taken or any failure to take such action, if he or she performs such duties in compliance with this subsection.

Mo. Rev. Stat. § 347.088.1. Defendant Morris has an obligation by Missouri statute to operate in good faith and in the manner a reasonable person would believe to be in the best interest of the limited liability company. Additionally, Plaintiffs argue that Mo. Rev. Stat. § 400.9-610 further defines Defendant Morris's responsibility as it relates to the disposition of collateral after default. Mo. Rev. Stat. § 400.9-610(b) states "[e]very aspect of a disposition of collateral, including the method, manner, time, place, and other terms, must be commercially reasonable. At this stage of the litigation the Court finds that Defendant Morris's obligation to operate in good faith in the manner a reasonable person would believe to be in the best interest of the limited liability company would include disposing of collateral in a manner that is commercially reasonable. For the reasons

---

[2] Plaintiffs have not provided any documentation attached to their Complaint to individually verify this claim. However, for the purposes of a motion to dismiss, the Court will accept Plaintiffs' allegations as true.

stated, Defendants' Motion to Dismiss Count II based upon failure to adhere to Federal Rule of Civil Procedure 9(b) is **DENIED**.

## II. Count III – Tortious Interference

### A. Economic Loss Doctrine

Defendants argue that Count III is based on the Missouri tort law claim of tortious interference arising out of the parties' contracts. Defendants assert that this claim must be barred because the economic loss doctrine prohibits a plaintiff from recovering on tort claims when the subject matter of the alleged misrepresentation was part of the contract. Plaintiffs argue that the economic loss doctrine is inapplicable in this case, as argued above.

As discussed, the economic loss doctrine does not pertain to this particular type of loss. The economic loss doctrine prohibits a buyer of goods from seeking recovery in tort, not for a tortious interference claim. Missouri law has limited the economic loss doctrine to those cases seeking warranty and negligence or strict liability claims. Plaintiff's Count III does not fall into any of these categories nor is the economic loss doctrine intended to prevent a tort action occurring outside the UCC in a matter such as this. *See MEA Fin. Enterprises, LLC v. Fiserv Sols., Inc.*, No. 13-05041-CV-SW-BP, 2013 WL 12155467, at *3 (W.D. Mo. Oct. 16, 2013); *Heartland Med., LLC v. Express Scripts, Inc.*, No. 4:17-CV-02873 JAR, 2018 WL 4216669, at *2 (E.D. Mo. Sept. 5, 2018). The Court finds that the economic loss doctrine does not apply to Plaintiffs' tortious interference claim. For the reasons stated, Defendant's Motion to Dismiss Count III based on the economic loss doctrine is **DENIED**.

### B. Failure to Allege the Necessary Facts to State a Claim

Defendants argue that Plaintiffs failed to plead facts that show Defendant Morris was unjustified in purchasing this debt. Plaintiffs argue that their Complaint contains sufficient facts to support all elements of their claim for tortious interference. Plaintiffs argue Defendants purchased the debts of the LLCs for the purpose of acquiring the assets of the LLCs without payment to Plaintiffs and to force Plaintiffs to pay loan deficiencies created by Defendants' destruction of the LLCs. Plaintiffs further allege argue that Defendant Morris refused to sign loan extensions and the Defendants took other actions that would harm the LLCs.

To succeed on a claim of tortious interference with a business expectancy a plaintiff must prove: "(1) a contract or valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from the defendant's conduct. *Reyna Hotel Corp. v. Lotus Hosp. Mgmt., LLC*, 714 S.W.3d 423, 432 (Mo. Ct. App. 2025) (citing *W. Blue Print Co., LLC v. Roberts*, 367 S.W.3d 7, 19 (Mo. banc 2012)). A defendant is justified to interfere in a contract or expectancy when the defendant has a legitimate economic interest in it. *BMK Corp. v. Clayton Corp.*, 226 S.W.3d 179, 192 (Mo. Ct. App. 2007) (citing *Cmty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n*, 796 S.W.2d 369, 372 (Mo. banc 1990)). "One who has a present existing economic interest, such as a prior contract of his own or a financial interest in the affairs of the person persuaded not to enter into a contract, is privileged to interfere with another's business expectancy to protect one's own economic interest." *Id*.

Plaintiffs' Count III sufficiently alleges the necessary facts to state a claim for tortious interference. Here, Plaintiffs' Complaint states "Jim Morris and PBack Holdings purchased the Southern Bank and/or Legacy Bank Loans made to the LLCs on or about December 22, 2023. Neither Jim Morris nor Paul Freeman nor PBack Holdings had justification for their interference."

11

(Complaint ¶¶ 206 and 210). Plaintiffs further alleged that "Defendants coordinated to use PBack Holdings to purchase the debt of the LLCs in order to acquire the assets of the LLCs without payment to Plaintiffs and to force Plaintiffs to pay loan deficiencies created by Defendants' destruction of the LLCs." (Complaint ¶ 75). Plaintiffs have sufficiently alleged the necessary facts to state a claim for tortious interference. Plaintiffs have alleged that Defendants purchased the debt of the LLCs in order to acquire the assets of the LLCs without payment to Plaintiffs and to force Plaintiffs to pay the loan deficiencies. The Complaint is devoid of any allegations that would show that Defendants were justified to interfere in a business expectancy or was protecting his own economic interest. For the reasons stated, Defendants' Motion to Dismiss Count III based on a failure to allege the necessary facts to state a claim for tortious interference is **DENIED**.

### III. Count IV – Violation of the Racketeer Influenced and Corrupt Organization Act – Mail and Wire Fraud

Defendants argue Count IV fails as a matter of law because none of Defendants' alleged actions constituted criminal activity or illegal activity amounting to racketeering. Plaintiffs argue that they have sufficiently alleged Defendants acted criminally or illegally in multiple places within their Complaint.

Racketeer Influenced and Corrupt Organization Act ("RICO") prohibits "any person employed by or associated with any enterprise engaged in … interstate … commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity." 18 U.S.C. § 1962(c). RICO, however, "'does not cover all instances of wrongdoing. Rather, it is a unique cause of action that is concerned with eradicating organized, long-term, habitual criminal activity.'" *Crest Const. II, Inc. v. Doe*, 660 F.3d 346, 359 (8th Cir. 2011) (quoting *Gamboa v. Belez*, 457 F.3d 703, 705 (7th Cir. 2006). To establish their civil claim

under RICO, a plaintiff must show that defendants engaged in "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 428 (8th Cir. 2009) (quoting *Sedima S.P.R.L Imrex Co.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)).

"When pled as RICO predicate acts, mail and wire fraud require a showing of: (1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of the mail or wires to further the scheme." *Wisdom v. First Midwest Bank, of Poplar Bluff*, 167 F.3d 402, 406 (8th Cir. 1999) (citing *Murr Plumbing, Inc.*, 48 F.3d at 1069 n.6). "[T]he term 'scheme to defraud' connotes some degree of planning by the perpetrator, [and] it is essential that the evidence show the defendant entertained an intent to defraud." *Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 991 (8th Cir. 1989) (quoting *United States v. McNeive*, 536 F.2d 1245, 1247 (8th Cir. 1976)).

### A. Criminal Activity or Illegal Activity Amounting to Racketeering

Plaintiff has sufficiently alleged criminal/illegal activity amounting to racketeering. Plaintiffs' Complaint alleges that Jim Morris and Paul Freeman diverted money and assets through inflated and/or false invoices through companies such as Royal Lawn Care, RLC and Chase Erectors. (Complaint ¶¶ 128-130). This allegation is sufficient to show criminal/illegal activity amount to racketeering. However, Plaintiffs allege a list of claims including Defendants Morris and Freeman using their LLCs to take money from the shared LLCs of the parties; the use of attorneys to pressure and threaten Plaintiffs; and telling existing customers of the shared LLCs they were going out of business, among other claims. (Plaintiffs' Complaint ¶¶ 222-223). As to Count IV, Plaintiffs have sufficiently shown a right to relief above a speculative level and at this

13

stage of the litigation may continue with their cause of action. For the reasons stated, Defendants' Motion to Dismiss Count IV based on a failure to allege Defendants actions constituted criminal or illegal activity amounting to racketeering is **DENIED**.

### B. Federal Rule of Civil Procedure 9(b)

Defendants argue that Plaintiff's allegations of mail and/or wire fraud are wholly without specificity in violation of Federal Rule of Civil Procedure 9(b). Plaintiff argues that their Complaint is sufficiently specific pursuant to Federal Rule of Civil Procedure 9(b).

Federal Rule of Civil Procedure 9(b) requires that "[i]n alleging fraud … a party must state with particularity the circumstances constituting fraud." *H & Q Props., Inc. v. Doll*, 793 F.3d 852, 856 (8th Cir. 2015) (quoting Fed. R. Civ. P. 9(b)). The "[c]ircumstances" of the fraud include "such matters as the time, place and contents of false representations, as well as the identity of the person making the misrepresetnatinon and what was obtained or given up thereby.'" *Murr Plumbing, Inc. v. Scherer Bros. Fin. Servs. Co.*, 48 F.3d 1066, 1069 (8th Cir. 1995) (quoting *Bennett v. Berg*, 685 F.2d 1053, 1062 (8th Cir. 1982)).

The Court finds that Plaintiffs' Complaint is sufficiently specific in its allegations of mail and/or wire fraud. Plaintiffs' Complaint alleges:

> By use of wire communications (e-mail, text and telephone), Jim Morris and Paul Freeman used Spaces to take money from the LLCs, require the other LLCs to complete the Spaces construction work, and limit the ability of the LLCs to operate their businesses.

(Complaint ¶ 223b). Additionally, Plaintiff alleges by use of wire communications that Defendants Morris and Freeman used Baitworkx, LLC and Ozark Shores, LLC to take money from the LLCs; communicated with customers of MS Propane to tell the customers of MS Propane that the company was going out of business; communicated allegations to business associates and

14

customers of the Sanford Plaintiffs and the LLCs among other allegations. (Complaint ¶ 223). These allegations, in tandem with the other factual allegations in Plaintiffs' Complaint are sufficiently specific to survive at this stage of the litigation. For the reasons stated, Defendants' Motion to Dismiss Count IV pursuant to Federal Rule of Civil Procedure 9(b) is **DENIED**.

IV. **Count V – Violation of the Racketeer Influence and Corrupt Organizations Act --- Conspiracy**

Defendants argue Count V fails to state a claim for conspiracy to violate RICO because Plaintiffs do not allege Defendants engaged in illegal or criminal activity and because their allegations lack factual support. Plaintiffs argue that they have sufficiently alleged Defendants acted criminally or illegally in multiple places within their Complaint.

To allege a RICO conspiracy, a plaintiff must first establish a right to relief under 18 U.S.C. § 1962(c), and then allege "either that a defendant personally agreed to commit two predicate acts in furtherance of the enterprise or that a defendant 'agree[d] to participate in the conduct of the enterprise with the knowledge and intent that other members of the conspiracy would commit at least two predicate acts in furtherance of the enterprise.'" *Nestle Purina Petcare Co. v. Blue Buffalo Co. Ltd.*, 181 F. Supp. 3d 618, 634 (E.D. Mo. 2016) (quoting *United States v. Henley*, 766 F.3d 893, 908 (8th Cir. 2014)).

As discussed prior, Plaintiffs have sufficiently alleged in their Complaint that Defendants engaged in illegal or criminal activity with enough factual support to survive at the motion to dismiss stage of the litigation. To the extent Defendants seek to dismiss this claim based upon a failure to plead factual support, it will not succeed. For the reasons stated, Defendants' Motion to Dismiss Count V based upon a failure to plead factual support is **DENIED**.

V. **Count VI – Violation of Federal Antitrust Law**

15

Defendants argue that Plaintiffs do not plead a legitimate claim for relief under the Sherman Act because Defendants Morris, Freeman and PBack Holdings are not separate economic actors pursuing separate economic interests. Defendants argue that Morris and Freeman operated all relevant LLC entities together, never in competition, and therefore the pair cannot conspire to violate the Sherman Act in their alleged coordinated action. Plaintiffs argue that the issue of separate economic actors pursuing separate economic interests is a factual issue not proper at the motion to dismiss stage. Further, Plaintiffs argue that their Complaint explicitly alleges Morris, Freeman, and PBack Holdings are separate entities and that Morris and Freeman were individuals pursuing economic interests prior to PBacks' existence in October and November of 2023. Plaintiffs also assert that even if Defendants Morris, Freeman, and PBack Holdings are not separate economic actors, Plaintiffs also alleged Baitworkx, LLC, Ozark Shores, LLC are part of the Sherman Act violation.

Section 1 of the Sherman Act prohibits "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. To establish a claim under Section 1 of the Sherman Act, a plaintiff must plead evidentiary facts which, if true, will prove: (1) there was a contract, combination, or conspiracy; (2) the agreement unreasonably restrained trade under either a per se rule of illegality or a rule-of-reason analysis; and (3) the restraint affected interstate commerce. *Sitzer v. Nat'l Ass'n of Relators*, 420 F. Supp. 3d 903, 911 (W.D. Mo. 2019); *see also HM Compounding Servs., Inc. v. Express Scripts, Inc.*, No. 4:14-CV-1858-JAR, 2015 WL 4162762, at *3 (E.D. Mo. July 9, 2015).

Here, Defendants cite to *Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 130 S.Ct. 2201, 176 L.Ed.2d 947 (2010) for the proposition that to successfully bring a cause of action under

16

the Sherman Act, defendants must be separate economic actors pursuing separate economic interests. However, *Am. Needle, Inc. v. Nat'l Football League* states in relevant part:

> Because the inquiry is one of competitive reality, it is not determinative that two parties to an alleged § 1 violation are legally distinct entities. Nor, however, is it determinative that two legally distinct entities have organized themselves under a single umbrella or into a structured joint venture. The question is whether the agreement joins together "independent centers of decisionmaking." [(citation omitted)]. If it does, the entities are capable of conspiring under § 1, and the court must decide whether the restraint of trade is an unreasonable and therefore illegal one.

*Am. Needle, Inc. v. Nat'l Football League*, 560 U.S. 183, 196, 130 S.Ct. 2201, 2212, 176 L.Ed.2d 947 (2010).

When looking at this standard, Plaintiff has sufficiently stated a right to relief above a speculative level. Plaintiffs' Complaint alleges that Defendants Morris, Freeman and PBack Holdings are not, together, a legal entity. (Complaint ¶ 174). Plaintiffs' Complaint further alleged that Defendants Freeman, Morris and PBack Holdings obtained credit facilities, trade secrets and confidential information from MS Propane, Boat Worx, LLC, and other shared LLCs to lessen the competition in the marketplace for those respective businesses. (Complaint ¶¶ 238-240, 242, and 244). Defendants Freeman, Morris and PBack Holdings are legally distinct entities and Defendants Freeman and Morris are considered independent centers of decision making. Defendant PBack Holdings is wholly owned by Defendant Morris and thus is not considered an independent center for decision making for the purposes of the analysis. However, even with Defendant PBack Holdings being an extension of Defendant Morris, the analysis, at this stage of the litigation remains unchanged. Defendants Freeman and Morris were pursuing their own economic interests compared to those of the shared LLCs with Plaintiffs. Plaintiffs have sufficiently alleged a right to relief above a speculative level in this Count. For the reasons stated, Defendants' Motion to Dismiss Count VI based on a failure to state a claim for relief is **DENIED**.

## VI. Count VII – Civil Conspiracy

Defendants argue that Plaintiffs fail to state a claim for civil conspiracy in Count VII because the claim is contingent on Count II which fails as a matter of law for failure to state a claim due to the economic loss doctrine and failure to plead fraud with the requisite specificity. Plaintiffs argue that their claims under Count II should not be dismissed and thus Defendants' reasoning for dismissing the conspiracy claims no longer apply.

As the Court has previously analyzed Defendants' arguments for Count II and found that the economic loss doctrine does not apply and that Plaintiffs have plead fraud with the requisite specificity, the Court finds no reason at this stage of the litigation to dismiss Count VII. For the reasons stated, Defendants' Motion to Dismiss Count VII based upon Count II failing as a matter of law is **DENIED**.

## CONCLUSION

For the reasons set forth herein, Defendants' Motion to Dismiss Counts II, III, IV, V, VI and VII of Plaintiffs' Third Amended Complaint are **DENIED**.

**IT IS SO ORDERED**.

DATED: September 22, 2025

                                                   */s/ Douglas Harpool*
                                                   **DOUGLAS HARPOOL**
                                                   **UNITED STATES DISTRICT JUDGE**